IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 25-cv-02416-NYW-MDB

WABASH PROPERTIES, LLC, and
EAST CONSTITUTION PLANT, LLC,

    Plaintiffs,

v.

MARTIN MARIETTA MATERIALS REAL ESTATE INVESTMENTS, INC.,

    Defendant.

---

## ORDER ON MOTION TO REMAND

---

This matter is before the Court on Plaintiffs' Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(c) ("Motion" or "Motion to Remand"). [Doc. 15]. Defendant Martin Marietta Materials Real Estate Investments, Inc. ("Defendant" or "Martin Marietta") has responded in opposition. [Doc. 18]. Plaintiffs Wabash Properties, LLC ("Wabash") and East Constitution Plant, LLC ("East") (together "Plaintiffs") have replied. [Doc. 19]. The Court finds that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion to Remand is respectfully **GRANTED**.

## BACKGROUND

Plaintiffs each lease a commercial property to Martin Marietta. [Doc. 5 at ¶¶ 5, 6]. Wabash and Martin Marietta entered into a lease agreement for "South Plant Concrete" on February 6, 2016 ("South Plant Lease"), [*id.* at ¶ 5; Doc. 1-2], and East and Martin Marietta entered into a lease agreement for "East Constitution Plant" that same day ("East Plant Lease") (collectively, "Lease Agreements"), [Doc. 5 at ¶ 6; Doc. 1-3]. The annual

1

rent for the South Plant Lease is $186,000. [Doc. 1-2 at 2–3 § 6]. The annual rent for the East Plant Lease is $405,000. [Doc. 1-3 at 2–3 § 6].

Both Lease Agreements contain identical provisions relating to subleasing. [Doc. 5 at ¶ 7]. Under those provisions, if Martin Marietta subleases the leased property for a higher rent amount than the rent due under the property's Lease Agreement, then the respective Plaintiff is entitled to 35% of the "Excess Rent," unless the Excess Rent is less than $1,000 per year. [Doc. 1-2 at 8 § 12(c); Doc. 1-3 at 8 § 12(c)]. The Lease Agreements refer to the portion of Excess Rent owed by Martin Marietta to the lessor as "Additional Rent." [Doc. 1-2 at 8 § 12(c); Doc. 1-3 at 8 § 12(c)].

In April 2022, Martin subleased both properties to non-party Smyrna Ready Mix Concrete, LLC ("Smyrna"). [Doc. 5 at ¶¶ 8–9]. Both subleases contain the same rent provision:

> 10. RENT. Smyrna shall pay Martin Marietta the sum of ten dollars ($10.00) for the Term, as rent, due upon execution hereof ("Sublease Rent"). In addition, it is understood and agreed that Smyrna shall purchase its requirements for construction aggregates for use in the operation of the Plan from Martin Marietta and pay all amounts when due under the Supply Agreement. Failure to comply with the terms of the Supply Agreement shall be a material breach of this Agreement.

[Doc. 5-1 at 66 § 10; *id.* at 78 § 10].

Plaintiffs contend that the payments for construction aggregates from Smyrna to Martin under the "Supply Agreement" count toward the Excess Rent calculation under the Lease Agreements' subleasing provision. [Doc. 5 at ¶¶ 12, 16, 24]. They further allege that Martin has not produced any Supply Agreement between itself and Smyrna. [*Id.* at ¶ 12]. Plaintiffs thus commenced this action to ascertain whether they are entitled to a portion of Smyrna's construction aggregates payments to Martin as Additional Rent and,

2

if so, how much. See [*id.*; *id.* at 1 ¶ 1]. In their Complaint, Wabash brings a claim for declaratory relief, asking the Court to order that the South Plant Lease entitles Wabash to 35% of Smyrna's payments to Martin that exceed Martin's rent under the South Plant Lease. [*Id.* at ¶¶ 14–18]. Wabash also brings a claim for an accounting from Martin to disclose "complete information" regarding Smyrna's payments to Martin and determine whether Martin owes Wabash any Additional Rent. [*Id.* at ¶¶ 19–21]. East brings identical claims for declaratory relief and accounting based on the East Plant Lease. [*Id.* at ¶¶ 22–29]. Both Plaintiffs also seek attorney's fees pursuant to their respective Lease Agreements. [*Id.* at ¶¶ 18, 26; Doc. 1-2 at 20 § 30(e); Doc. 1-3 at 18 § 29(e)].

Plaintiffs initially filed their claims in state court. [Doc. 5 at 1]. Defendant removed the case to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. [Doc. 1]; *see also* 28 U.S.C. § 1441(a)–(b). Plaintiffs now move for a remand. [Doc. 15].

## LEGAL STANDARDS

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal district courts have diversity jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). When a plaintiff challenges a removing defendant's "assertion of the amount in controversy[,] . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014).

3

"[Once] underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake." *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008).  However, the "amount in controversy cannot be met by 'conjecture' and speculation." *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1127–28 (10th Cir. 2021) (collecting cases).

In a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation." *Lovell v. State Farm Mut. Auto. Ins. Co*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") follows the "either viewpoint" rule, "which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum."  *Id.*  But in cases with multiple plaintiffs, this rule "does not override the well-established principle that each plaintiff . . . must individually satisfy the amount-in-controversy requirement." *Phelps*, 5 F.4th at 1126.  When multiple plaintiffs assert claims arising from "individual contracts with a defendant," those claims cannot be aggregated to determine the amount in controversy, because "the plaintiffs are not suing to enforce a common title or right to which they have a common and undivided interest." *Lovell*, 466 F.3d at 897–98 (collecting cases).

## ANALYSIS

Plaintiffs contend that the Court cannot exercise diversity jurisdiction over this case, because the amount in controversy does not satisfy the $75,000 minimum set out

4

in 28 U.S.C. § 1332(a).[1]  [Doc. 15 at ¶ 5].  In their Motion to Remand, Plaintiffs insist that they are not asserting breach of contract claims, nor do they seek monetary damages. [*Id.* at ¶¶ 2–3].  Rather, Plaintiffs claim to "simply seek disclosure of the information or data necessary to determine how much the subtenant is paying Martin Marietta under each sublease."  [*Id.*].  They argue that because the Complaint seeks only declaratory relief and an accounting, not money damages, Defendant's cost to comply with any judgment would be less than $75,000.  [*Id.* at ¶¶ 7–8].  They also argue that Defendant's rent under the Lease Agreements is irrelevant on its own, and that Defendant would need to produce its Supply Agreement with Smyrna to rely on Excess Rent in establishing that the amount in controversy exceeds the jurisdictional amount.  [*Id.* at ¶¶ 9–10, 13].  Finally, Plaintiffs argue that there is no evidence that Plaintiff's attorney's fees—should they prevail—will exceed $75,000.  [*Id.* at ¶ 11].

Defendant criticizes Plaintiffs as taking a "coy approach."  [Doc. 18 at ¶ 3].  It argues that the fact that the Complaint seeks no money damages is immaterial, because Plaintiffs will "[q]uite obviously . . . attempt to collect money from Defendant if it is determined that additional rent is owed to Plaintiffs."  [*Id.*].  This Court agrees that the "object" of Plaintiffs' lawsuit is a declaration that, if granted, could enable them to collect 35% of Excess Rent that Martin Marietta receives from Smyrna under the Supply Agreement.  *See* [Doc. 5 at ¶¶ 18, 26].  Thus, the mere fact that Plaintiffs do not currently assert breach of contract claims and seek money damages does not end the amount-in-controversy analysis.

---

[1] Plaintiffs do not dispute that they are diverse from Defendant for jurisdictional purposes. *See* [Doc. 15 at ¶ 5].

5

Even so, the Court is respectfully unpersuaded, based on the record presented by Defendant, that Defendant has satisfied its burden to prove jurisdictional facts demonstrating that it is possible that $75,000 or more is "in play."  *See McPhail*, 529 F.3d at 955.  Defendant's central argument is its assertion that Smyrna purchases enough material under the Supply Agreement that, "if Plaintiffs' position is correct, more than $75,000 of additional 'Excess Rent' would be owed by Defendant to Plaintiffs."  [Doc. 18 at ¶ 7].  But Defendant has not submitted the Supply Agreement or any information about exactly how much material Smyrna purchases for either of the leased properties, or what amounts would be attributable to Excess Rent as opposed to supply materials.  Instead, Defendant's sole factual support for this claim is a single statement in an affidavit from Andy Sanders ("Mr. Sanders"), one of its corporate officers.  [*Id.*; Doc. 18-1 at ¶¶ 3–4].  Mr. Sanders avers that "[t]he amount of materials purchased by Smyrna pursuant to the Supply Agreements in 2024 alone would cause Defendant to owe Plaintiff more than $75,000 in excess rent under the Lease if Plaintiff prevailed in this case."  [Doc. 18-1 at ¶ 4].  But Mr. Sanders provides no other explanation or evidence for this assertion.  *See* [*id.*].

Defendant appears to misapprehend how the jurisdictional amount would be calculated in this case.  As an initial matter, Plaintiffs are suing based on separate "individual contracts" with Martin—i.e., their own Lease Agreements—so the value of any Additional Rent owed to Plaintiffs cannot be aggregated.  *See Lovell*, 466 F.3d at 897–98 (collecting cases).  Therefore, Defendant's argument that "[b]ased on the amount of materials Smyrna purchases from the Defendant under the Supply Agreement, if Plaintiffs'

6

position is correct, more than $75,000 of additional 'Excess Rent' would be owed by Defendant to Plaintiff<u>s</u>," [Doc. 18 at ¶ 7 (emphasis added)], is simply inapposite.

Similarly, Defendant's reliance on Mr. Sanders' statement that "[t]he amount of materials purchased by Smyrna pursuant to the Supply Agreements in 2024 alone would cause Defendant to owe Plaintiff more than $75,000 in excess rent under the Lease if Plaintiff prevailed in this case," [Doc. 18-1 at ¶ 4], also does not establish the requisite jurisdictional amount. Excess Rent is not what is due to each Plaintiff; rather, each Plaintiff is entitled to Additional Rent calculated as 35% of Excess Rent under the Lease Agreements. *See* [Doc. 1-2 at 8 § 12(c); Doc. 1-3 at 8 § 12(c)]. In other words, even assuming that Smyrna's supply purchases from Defendant for each location are sufficient to constitute Excess Rent, Defendant must still show that, for each property, the resulting Additional Rent (calculated as 35% of Excess Rent) would amount to over $75,000. Defendant fails to acknowledge either the aggregation issue or the Lease Agreements' distinction between Additional Rent and Excess Rent. *See* [Doc. 18 at ¶ 7].

Even putting aside these analytical flaws, Defendant has put forward insufficient competent evidence in this case for jurisdictional purposes. Mr. Sanders's statement that Defendant would "owe Plaintiff more than $75,000 in excess rent under the Lease if Plaintiff prevailed in this case," *see* [Doc. 18-1 at ¶ 4], is wholly conclusory and not competent evidence to prove the requisite jurisdictional facts. *See Burger v. Burns & Wilcox, Ltd.*, No. 19-cv-03462-PAB-STV, 2020 WL 10893491, at *3 (D. Colo. Feb. 24, 2020) ("Proof of amount in controversy may arise in a variety of ways, but conclusory assertions or outright speculation do not suffice." (quotation and ellipsis omitted)).

7

Defendant's alternative arguments fare no better. First, Defendant seeks to rely on the Lease Agreements themselves, because the annual rent under each agreement exceeds $75,000. [Doc. 18 at ¶¶ 9–10]. But the annual rent is not the "object" of this case, only the Additional Rent. Defendant's annual rent obligations would be unaffected by the declaratory relief that Plaintiffs seek, *see* [Doc. 5 at ¶¶ 14–18, 22–26], and Plaintiffs agree that they "are timely receiving rent from Martin Marietta and the Complaint does not otherwise allege," [Doc. 15 at ¶ 10]. Second, Defendant asserts that Plaintiffs' request for attorney's fees could establish the amount in controversy, because "it is likely that the reasonable attorney fees incurred by the parties will be significant." [Doc. 18 at ¶ 10]. In addition to eliding the fact that Plaintiffs' claims—and thus their attorney's fees—are not aggregable, this argument is purely speculative. *See Stuart v. Cocorilla, Ltd.*, No. 18-cv-00926-KLM, 2019 WL 529517, at *4–5 (D. Colo. Feb. 11, 2019) (declining to credit speculative claims of future aggregated attorney's fees and emphasizing that "a party seeking diversity jurisdiction may not aggregate the attorneys' fees from multiple claims to meet the amount in controversy requirement" (citing *Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1293 (10th Cir. 2001), *abrogated on other grounds by Dart Cherokee*, 574 U.S. 81)).

As Plaintiffs point out, all materials necessary to "affirmatively establish jurisdiction"—such as the Supply Agreement or records of payments from Smyrna to Defendant—are presumably within Defendant's custody and control. [Doc. 15 at ¶ 13]; *McPhail*, 529 F.3d at 955. Defendant does not suggest otherwise. *See generally* [Doc. 18]. Mr. Sanders himself asserts that, through his position with Martin Marietta, he is familiar with the Supply Agreement and the value of Smyrna's purchases from Defendant.

8

*See* [Doc. 18-1]. If these records corroborate Defendant's conclusory assertions about the amount in controversy, then establishing jurisdiction should have been straightforward. But Defendant failed to provide any such evidence to carry its burden. Accordingly, "it is legally certain that the jurisdictional facts do not establish a sufficient amount in controversy to qualify for federal subject-matter jurisdiction under § 1332(a)." *Phelps*, 5 F.4th at 1128. The Motion to Remand is respectfully **GRANTED**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiffs' Motion to Remand to State Court [Doc. 15] is **GRANTED**;

(2) This case is **REMANDED** to the District Court for El Paso County, Colorado;

(3) Plaintiffs are **AWARDED** their costs pursuant to Fed. R. Civ. P. 54(d) and D.C.COLO.LCivR 54.1. No later than January 28, 2026, Plaintiffs may file a bill of costs in compliance with D.C.COLO.LCivR 54.1; and

(4) The Clerk of Court is **DIRECTED** to **TERMINATE** this case.

DATED:  January 14, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge